Lorenzo Davis v. City of Chicago Good morning, Justices. I'm Toria Hamilton on behalf of the Appellatee. I'm also a trumpet-favorite Luther of Pennsylvania. And Lorenzo Davis is joining us also. You may have a seat, ma'am. Thank you. I'm Justin Hooper from the City of Chicago. When you're ready. May it please the Court. Davis' $2 million Emotional Damages Award is excessive and should be remitted. To begin, the $2 million award is beyond the range of fair and reasonable compensation given the scant evidence of emotional distress in this case. A reviewing court is obligated to reduce a verdict that is excessive in light of the evidence induced at trial. And therein lies Supreme Court Rule 366, expressing the powers of this Court to order remitted. Here, Davis was in his 60s at the time of his termination, had already retired from a 23-year career at CPD, and planned to work another five years at IPRA. He suddenly received $751,000. What was the testimony he has to this emotional distress that he suffered during the course of the trial? Essentially, it was very brief, Your Honor. He testified that he was upset by his discharge, that he was humiliated by his termination, that he was depressed, but that he wasn't depressed enough to seek help. That was really basically the extent of it, that he was upset that he lost his job that he had for years working for the city as a public employee. There was really not much more than that. The city's position seems to be that the entire basis for an emotional distress verdict was about half a page of testimony, almost an afterthought in the examination of this witness. Would it not have been possible for the jury to have inferred, based on all the other testimony of what he went through in the process of getting fired, not even taking the box of stuff out the door on the day he got fired, but all the stress he went through leading up to his firing, would have been appropriate to consider to justify the high emotional distress verdict that you're now challenging. Well, certainly, Your Honor, there's always stress whenever someone is terminated, and I believe courts have generally recognized that people who are terminated wrongfully are entitled to emotional distress damage for that reason, but when it comes to a large amount of damages, a massive amount like $2 million, courts have simply said that those ordinary feelings of stress, of upset, of depression, that come with getting terminated aren't sufficient. There has to be some sort of extraordinary circumstance beyond that to justify this type of award, and there simply was no evidence whatsoever in that regard here. So what was the trial court referring to when he refused to grant a remediator based on what he says was the record as a whole, or all the evidence, and the public humiliation of it? Well, Your Honor, the trial court was very brief in his comments, while just stating that based on his review of the evidence and his having heard it, that it was sufficient, but he didn't go into more detail, so it's difficult to understand exactly what he thought beyond that one sentence that he stated at the argument. The record is clear here as to what was put forth before the jury, again, in its very short, brief testimony about these ordinary feelings of upset and distress. There was nothing more upon which the trial judge or the jury could have relied upon. They testified to no physical manifestations of emotional distress, no financial hardship, no long-term mental effects, no changes of personality, nothing beyond these ordinary feelings. During the course of his testimony, the plaintiff made a comment as to the severity of the emotional distress, didn't he? He stated that he was upset and that it was difficult for him to talk about at trial. At the same time, he also admitted that he had spoken to the press about it ten times, that he had been out speaking about it. And on that, he didn't really say anything more about the severity. Do I misread the record where he said a, quote, not severe enough to seek help? No, that's correct, Your Honor. He did say, and I did mention that a moment ago, he did say that his depression was not severe enough to seek help on cross-examination. That is correct, Your Honor. And here the $2 million award was also the result of passion and prejudice. Given the minimal evidence of emotional damages, the $2 million award was likely the result of the jury's having been subjected to a two-week-long trial focused on police shootings and alleged beating, all involving teenagers. From the start of the trial until its end, the jury was flooded by testimony about the shootings and even photographs of an injured teenager. Multiple witnesses testified to the details of the shooting of an unarmed teenager and another shooting involving a vehicle containing minor passengers. The trial judge initially bought admission in the photographs of the injured teenager because the judge recognized that they were inherently prejudicial, but soon responded and reversed that rule in the trial and admitted them and allowed the jury to see them. After that, the risk of potentially inflaming the jury with all of that testimony and the photographs became a reality when the jury returned its $2 million award for emotional damages. The $2 million emotional damages award should also shock the judicial conscience. If allowed to stand, the $2 million award would be the largest emotional damages award ever formed in an employment case in Illinois by a huge margin. Illinois, did anybody do a nationwide search on this? We did, Your Honor, and we cited dozens of cases in our opening brief on this. Quite simply, the only judgment that we've ever been able to locate anywhere in the country affirming $2 million in an employment case for emotional distress. Is it fair for us to presume that the search done by your side and the other side can respond in a moment if they want to was limited to appellate review of those verdicts as opposed to perhaps the verdicts were entered and simply never appealed? We are researched specifically for verdicts that were reviewed either by the trial court judge in affirming or modified by the trial court judge or by an appellate review. At least in Illinois you can go through the jury verdict report and come up with it. That's true, Your Honor, but here the question is whether remitted or is appropriate. That's what we were looking for specifically, were cases in which a court had actually considered the issue of whether remitted or was appropriate. For this specific scenario, which is emotional distress in an employment termination situation. That's absolutely correct, Your Honor. And again, the only case that we found affirming a $2 million award for emotional distress damages in an employment case involved an employee who had been raped by her supervisor. As far as we could find, the highest awards for emotional damages ever sustained under review in Illinois were $1 million for a whistleblower whose employer attempted to have him falsely prosecuted for sexual assault in retaliation for his whistleblowing activities and a $400,000 award for an employee who reduced evidence of extreme financial hardships to his family including the inability to purchase medication for his son and the loss of their home and also long-term changes to his personality which were corroborated by his wife's testimony as well. And here Davis had reduced no evidence of extraordinary circumstances that would otherwise justify such a large award in his case. You are suggesting that there would be a remitted or to $60,000. Is that correct? That's correct, Your Honor. And how do you come to that figure? Well, Your Honor, we sent the Suess case from the Federal District Court here in Illinois which reviewed other retaliatory discharge cases under Illinois law and said that that amount was in line with those cases. There are certainly other Whistleblower Act cases that range from the $25,000 to $40,000 range. There's the Molino case. There's the Young case. So we feel that that $60,000, which is at the top end of that range, certainly is where that report should come out. Federal courts across the country have also said that beyond $50,000 requires extraordinary circumstances. So it's also in line with all sorts of courts across the country. There's remarkable consistency really when you look at this principle of law that in an employment context that there must be extraordinary circumstances to justify a larger award, a six-figure award, and certainly a seven-figure award, which has only occurred in rare instances. Is this a suggestion that you made to the trial court? We did, yes, Your Honor. We cited some of these cases to the trial court. But did you suggest a figure? I don't believe we suggested a specific figure, but we did cite some of these cases to the trial court. And finally, Your Honor, the $2 million award crosses the line from compensation to punishment and was therefore barred by Section 2-102 of the Tort Immunity Act. Section 2-102 of the Act immunizes municipalities from punitive damages liability, and this Court has held that when damages exceed what is necessary to compensate a plaintiff, the excess serves only to punish the taxpayers and is therefore barred. Here, as we've explained, $2 million exceeds by a wide margin and are not necessary to compensate Davis for the meager emotional harm that he proved at trial. So if there are further questions, I'm happy to take them, but otherwise I would ask to reserve the rest of my time for rebuttal. No, thank you. Response? Thank you, Your Honor. Good morning. May it please the Court. The city is asking this Court to do something that this Court very rarely does, and that's to disturb a jury's assessment of a plaintiff's emotional damages. It's further asking this Court to find that Judge Snyder abused his discretion when after hearing all the evidence and sitting through this week-and-a-half-long trial, he declined to remit this award. This verdict should stand because the evidence supported it. There's no proof that the verdict was inflamed by any sort of passion, prejudice, or desire to punish the city, and because it should not chalk the judicial conscience. The law that applies to this case is very well settled. Justice Wolfson, back in 1996, remarked in the Berry case, Reviewing courts rarely disturb jury awards for good reason. We are in no better position to judge the appropriate amount of a verdict than are the 12 people who see and hear the arguments and the evidence. They use their combined wisdom and experience to reach fair and reasonable judgments. We are neither trained nor equipped to second-guess those judgments about pain and suffering. Your opponent raises a good point. Yes. Nowhere in the country has anyone ever seen an award decided that hasn't been reduced. And the cases from the Seventh Circuit have emotional damages in retaliatory discharge cases. One of them was reduced. They gave $100,000, and the Seventh Circuit reduced it to $50,000. I mean, $2 million when the plaintiff testifies is not severe enough for me to even seek help? Well, first of all, that testimony that you're referring to, Your Honor, was during cross-examination. I'm not disputing that he did not get... He said it. I don't care what he said. What he said was he was asked the question, if you look at the record, he was specifically asked... Did you ever seek medical treatment? The answer was, quote, not severe enough to seek help. No. Well, the way that the question went was the question was asked, have you previously testified that it wasn't severe, that your emotional damages weren't severe? And he responded, I previously testified they weren't severe enough to seek help. He never said they weren't severe. Let me ask you a question. I mean, do you think it's reasonable to award $2 million for emotional distress to someone who admits that his stress and suffering wasn't severe enough for him to seek medical treatment? Yes, in this unique case. Why? Unless you're punishing somebody. Because some people of a certain generation or in certain public service careers are reluctant to seek medical help. Just because he doesn't seek, it's not required that he seek medical help in order to... If he had said, I didn't seek medical help, you'd have a good argument. But he said it wasn't severe enough to seek medical help. But the question that he was asked when he responded, if you look at the exact question he's asked, Your Honor, he is asked, you previously testified that it wasn't severe. And then he said, well, I testified that it wasn't severe enough to seek help. He was disagreeing that it wasn't severe. What do you mean he wasn't disagreeing it wasn't severe? He said it wasn't severe. No. If you look at the record, he was... No. Did I misread the record? I don't read well? No, no, no. That's not... Of course I'm not so suggesting. I'm suggesting that it was cross-examination in which he was asked a question, you have previously testified that your damages were not severe. Right. Not severe. Not severe. Didn't say anything about what he actually said at his deposition. He responded, no, I said they weren't severe enough to seek help. So he said they weren't severe enough to seek help. That is what he said he testified. Yes, sir. Yes, sir. So $2 million, I mean, the Shields case that they cite, although it's a district court case, appears to be a pretty good analysis of Illinois law on these remittances. Well, first of all, it's a federal court case where they engage in comparison analysis, which the plaintiff probably takes issue with in this case. In Illinois, we don't engage in verdict comparison analysis. It's not the law in Illinois. It is the law in federal court. It is the law in the cases that were cited by the city. And let me just make it clear. There are other cases out there that have outheld an over $2 million award, such as Osterio v. Source Enterprises, 2007, Westlaw 683985, no remittance on a $4 million emotional damages case where there was no medical treatment. Is that case cited in your brief? No, and the reason why is because Illinois does not engage in verdict comparison analysis. Hold on, ma'am. Yes. It's not cited in your brief. You shouldn't be citing it now without a motion to cite additional stories. It's like checking and raising a card. It's not fair. Well, the reason I bring it up is because the city takes issue with the fact that the plaintiff, that the appellee has not offered its own list of citations of cases where a very large emotional damage verdict was not remitted. And you were given an opportunity to do this. Exactly. Yeah, but why not raise the cases that they cite in their brief? Yes, sir. You could have responded. The reason the plaintiff didn't is because that's not the law in Illinois. Illinois does not engage in comparative verdict analysis. That's why the plaintiff did not take the bait and engage in such. You're right. Illinois does not use comparison verdicts under normal circumstances. But there comes a point in time when a verdict may be so large that you have to say, this has never happened before here. And why did we say it's never happened before here? Because we looked at other verdicts and there aren't verdicts like this. And so is that comparison analysis or is it just to say this one seems to be a little bit too far? Well, Davis would submit that that is comparison verdict analysis. And furthermore, to speak on something that Justice DeLaurent mentioned, there was other evidence. The city would like to characterize Mr. Davis' damages as minimal or, I think they said, ordinary feelings. There was no support for that characterization in the transcript. That's not what he said. I think it was Your Honor that asked what did he actually say. And I can tell you what he actually said. What he said was, quote, you know after so many years in law enforcement and you feel like you know you're doing the right thing and you know that the citizens of Chicago, especially some communities, need you, need me, and you no longer have a position where you can help. My entire life I've been helping the citizens of Chicago in whatever way I could and there I was making the police department better and I was being fired by someone who was making the police department worse. I just wanted to tell you that that is actually what he said. He testified. There was other evidence besides these couple of pages where he testifies directly. There was other evidence during the trial upon which the jury could have relied in order to make its determination that $2 million was necessary to make this particular man under these particular unique facts whole. And that was, for example, he testified to losing his whole life's purpose. His life purpose was to help other people. He spent it in public service his entire life to the citizens of the city. Making that man whole is an entirely different situation than making someone whole who was fired after three years on the basis of age discrimination. Isn't it possible, though, you know we're trying to read the minds of the jurors here. Yes. And you took a case to trial and you decided not to request punitive damages, right? They're not available. They're not available against the city, but they would be available against the city employees. They might have a deep pocket, but it's been done, okay? And then punitive damages have been awarded personally against city employees. You didn't ask for that. So isn't it possible to read this record, and you're trying to get in the minds of the jurors what the jurors were thinking. They wanted to punish the city for the way this employee was treated, so they just threw $2 million on the emotional distress line. Well, first of all, we couldn't have actually named the individuals on the whistleblower claim. On the what? On the whistleblower claim. Okay. So we weren't able to name the individuals. If I'm recalling correctly, I believe we actually tried, and they were dismissed in the motion to dismiss. So we actually didn't have that option. That answers part of my question. Yes. But, Justice, the point is that there is no evidence that this was the result of passion or prejudice or punishment. There's nothing to rely on in the evidence. They don't even make any arguments that there was any improper evidence admitted that inflamed the jury or that there was any improper arguments made or that the jury was improperly instructed. And to make that jump when there is zero evidence in the record that the city can even point to would be essentially saying that the jury was incapable of following the jury instructions that they were given and coming to a reasonable verdict. There's something about that argument that says that there's something just inherent in the subject matter of this case that makes juries unable to come to a reasoned verdict. And that's not the respect that we show for juries. In this particular case, you went through the facts of what happened to this man and why he was fired and what they did and what was going on. And that was in support of, in most cases, the whistleblower claim and the rest of it. So the jury hears what the city did to this man. That doesn't mean he suffered emotional distress because of it. It only means this is what they did that resulted in his being fired. And the jury didn't like it. And we can understand why they didn't like it. And now comes the claim, I suffered emotional distress because of all this. Now the jury, this is compensatory damages. These are not punitive damages. And so the jury says, I have to make the man whole for the emotional distress, physical, mental suffering that was occasioned by this behavior. And they come up with $2 million. Well, yes, Your Honor. I have to judge the Lord's question. Are they punishing the city because of their behavior that led to the compensatory damages in the other claims as opposed to compensating them for emotional damages? Well, in order to reach that conclusion, you would have to just be speculating because there is no evidence in the record to rely upon. I suppose you're right to the extent we're speculating and saying this is so out of proportion. To the testimony as to the emotional damages, that something else had to have been going on here. Yes, there was other evidence that the jury was free to rely upon besides the cited portions of his actual testimony where he, as you can see from the record, he broke down. But in addition to that, there's other evidence that they were able to rely on, like, for example, the length of his career, the public nature of his firing. I suppose what I'm saying to you is this. You can have two individuals, one of which is fired under the circumstances that you state and says, I don't like the way I was fired. I was embarrassed by it. Did you suffer any emotional damage? No, I'm not emotionally different than I was before. I didn't like what happened to me, and I want my damages. And another man is fired under exactly the same circumstances. Did you suffer any emotional damages? I sure did. I had to go to a therapist every other day for four years. I can't understand how a thing like this would happen, and I can't sleep at night, et cetera, and so on. And he gets damages for emotional distress, fired under the same circumstances. So the question becomes, what is the emotional distress that was suffered, not how did it arise? Yes, and I believe that there was evidence in the record upon which this jury could reasonably rely to come to a decision that $2 million was necessary in this case for this particular person who had devoted his entire life to service of the city and essentially lost his life's purpose for doing the right thing. The nature and reason for his firing also was something that the jury was free to consider in determining whether there was a larger emotional impact on this particular person for being fired. For example, he was fired for refusing to participate in illegal activity. That's what the jury found. Being fired for that is going to have a deeper emotional impact on someone than being fired for age discrimination, which is a company that wants to save money. I suppose that depends on who the someone is. I'm sorry? I suppose that depends on who the someone is. Surely. And so we're back to the thing. We know the facts of what led to his firing. He was compensated for that. The question is, what's the evidence in the record as to the magnitude of the emotional distress suffered? He was a man who was a former law enforcement person, whose family is in law enforcement, who was fired for trying to be a whistleblower about police misconduct. It's going to take more money to make a person such as this whole than it would for somebody who worked for three years and then was fired and then was able to go on and do something else at a much younger age. Well, again, what you're talking about is that there was substantial basis for determining that the plaintiff could suffer emotional distress due to the wrongful conduct of the city. But the question becomes, what is the measure of those damages? And there isn't a lot of evidence here. And when you went to the jury and said, give him $2 million to $4 million, where were they going to put that? They put it at the lowest end of that recommendation. Well, what line on that verdict form? Well, it was, I mean, this is an amount that is approximately three times the special damages. It's less than three times the special damages that were introduced at the trial, which the jury originally awarded $800,000 and then was slightly reduced by the trial court. So while there, I mean, this sort of testimony, it really shouldn't be weighed by taking the pages and putting them on a scale and weighing them. It's more, that's why we leave this to a jury. The jury led the opportunity to observe the demeanor of Mr. Davis on the stand and the whole week during the trial. That's why we leave this and trust juries to make these determinations, because trying to second-guess that and trying to, you know, precisely measure emotional damages is something that is very difficult to do, and that's why we trust juries to do it. And it's very, very rarely done by reviewing courts or even trial courts. And Judge Snyder, Judge James Snyder, who regularly sits and listens to employment cases, he sits in the commercial calendar, he sat through this trial, he heard all the same evidence, and he declined to remit this emotional damages award. And it's not, he did not abuse his discretion, which is what this court would have defined in declining to remit this award. This is a unique case. There was other evidence, like Judge Justice DeLorte said, besides just these two pages or these few pages of direct testimony, there was other testimony during the trial and other evidence during the trial that the jury was entitled to rely upon when determining what amount was necessary to make Lorenzo Davis whole. And this court should not engage in this sort of verdict-to-comparison analysis. It's not the law in Illinois. All the cases cited by the city, it is the law in those jurisdictions, but it is not the law here. And so to take a record that has no basis in it to conclude that the verdict was punitive, it has no basis in it to conclude that the verdict was the subject of passion or prejudice, and to just say, oh, it's just too much in a jurisdiction that does not engage in verdict-to-comparison analysis would be supplanting your judgment. Well, I think they're taking to its logic what pollution is. We could never under a remit or under any circumstance, unless one of the jurors jumped up and said, we did this to punish them. I disagree. I think that generally these kinds of cases where they're saying that remit or is warranted, they're also saying that it's because there was some error. There was some error that inflamed the passion of the jury or there was some improper argument. These aren't error cases. Most of these cases that have been cited are cases where the courts just said, it's too much. I actually think that most of them also include, most of these cases, if not all, say that there were also evidentiary errors during the case or other errors were alleged. That's not what happened here. And it's just pure conjecture to say that this verdict was a result of passion or prejudice when there's just nothing in the record to support it. Lorenzo Davis, he devoted, it's not a $20 million verdict. It's not a $12 million verdict. It's essentially less than three times the special damages. Perhaps if it was a really large amount for somebody who worked for three years at a place and then found a reasonable job that was comparable to their previous job, then it would be prudent. When you're using the formula about how many times the special damage is, don't we usually see that in terms of pain and suffering from a physical injury as opposed to emotional distress? Yes. I'm just using it as a possibility for, just to compare it to it's not a $20 million or $12 million. There is some, you know, relationship to the special damages in the case. Counsel, could you bring your remarks up? Yes. Lorenzo Davis devoted nearly his entire life to public service, and his career was wrecked and ended by people who had not a sliver of his integrity. It was ended at an age and under circumstances that multiplied his emotional damages from this firing. And they were lasting and severe. He testified to that, that they were still ongoing at the time of the trial three years after his firing. Under the unique facts of this case, the verdict falls within the flexible range of what can be reasonably supported by the facts, and there's just zero basis in this record to reduce it. Thank you. Rebella? Just briefly, Your Honors, a few points. You know, Counsel, there were a lot of points. She makes an argument that says this federal case that you cited are in a jurisdiction that allows for comparisons. And she is right, we do not. Well, a couple of points on that, Your Honor. Federal courts apply Illinois law, and Illinois state law claims that retaliatory discharge apply Illinois law on damages. But they do not apply Illinois procedural rules. But none of those – Comparison is a procedural rule. It is not a substantive rule. That's true. But none of those cases – and I can't remember which one specifically actually discussed the comparison issue and actually said that it applied Illinois law when they do it. But regardless, it's not asking this Court to compare one case to another, to ask this Court to recognize that as a legal principle, courts generally, in employment cases, require more than ordinary upset and depression in order to justify this type of award. That's simply a legal principle. It's not asking this Court to say in this case there was this much evidence and in another case there was less. It's just simply asking this Court to recognize that principle and to say that here, there was simply no evidence that satisfies those extraordinary circumstances that would justify a $2 million award. Also, we heard a lot about Mr. Davis' loss of his job, his current job, his future ability to work for the city. And a reminder, Mr. Davis was fully compensated $751,000 for that loss, and the city does not challenge that award. And as far as abuse of discretion by the trial judge and this Court's ability to review that decision, the Illinois Supreme Court best said that it's a constitutional obligation of reviewing courts to determine whether remitted or is warranted, and that the failure to remit a judgment that is excessive in light of the evidence is error. It's not abuse of discretion. It's simply error to fairly do that. In this Court. No. Abuse of discretion is the standard we use to reach error. Right. So it is abuse of discretion. It is a discretion. Yeah. There's no question. Well, in Richardson, for example, which both parties have cited as the leading decision on whether or not courts can compare damages, in that case there were two plaintiffs who suffer harm, one debilitated harm in a car accident and the other lesser harm. And with the second plaintiff, the Supreme Court actually did, in the first instance, remit the damages that had been sustained by the trial court. And simply on the standard of that, the courts looked at the evidence and said, in light of that evidence, this is too much. It said it is excessive in light of the evidence of this harm. And the last point I just wanted to make, Your Honors, is that as far as there being zero evidence of the admission of improper evidence, again, the city objected to the admission of these photographs of a teenager who was allegedly beaten by the police. The trial judge said that those photographs should not come in initially because they would touch the hearts of everyone on the jury who looked at them, and then he changed his mind and let them in, and then we got a $2 million damages award. But you're not claiming error on the appeal. We're not claiming error. But, again, the standard is simply whether or not all of those evidentiary decisions led to passion and prejudice and this $2 million award. All right. Thank you, Your Honors. The House is thinking that it will be taken under advisement, and I continue to wish every court. Mr. Clerk, call the next case, please.